Staples, J.,
delivered the opinion of the court.
This case comes before us upon a writ of error and supersedeas to a judgment of the Circuit court of Richmond city. The action was brought upon a writing obligatory executed by the intestate of the plaintiff in error to defendant in error, and bearing date the 22nd day of May 1868. It is in the following language : •
“ On demand, I promise to pay R. Omohundro, jun., the just and full sum of twelve thousand and eight hun *630 dred dollars, for value received, borrowed money this date, to be paid when called for in Confederate money or w^atever money may be current of tbe State, 'or our banks pay out to depositors. As witness my band and caá! 55 "cai#
It is insisted, that this is an obligation to pay the nominal amount in legal currency of the United States.
At the date of this contract Confederate notes were depreciated in the ratio of five dollars and fifty cents for one, as compared with gold. The claim is therefore to a recovery of twelve thousand and eight hundred dollars in a sound currency, in consideration of an advance of that which was of the value of twenty-five hundred dollars only when the advance was made. A construction leading to consequences so oppressive and ruinous to the borrower, should never be adopted unless imperatively required by the express terms of the contract. In such case there should be nothing equivocal or doubtful; no language employed which may authorize another or different interpretation.
"What the parties intended by their written agreement in this case is not very clear; it is plainly to be inferred, however, that they did not intend that the time and mode of payment should depend wholly upon the pleasure of the creditor. The obligation was not only given in consideration of a loan of Confederate treasury notes, but the privilege is expressly reserved of repaying the loan in the same kind of currency. It is true that the instrument contains alternative provisions ; but they were intended for the benefit of the borrower. The object was to confer upon him a right of election, not to deprive him of the privilege of returning the same kind of money he had received.
But whatever may have- been tbe object, the debtor had the right, immediately upon the execution of the bond, of discharging the debt with Confederate treasury notes, if it suited his interests or his inclination so to do. *631 This right, it seems to me, necessarily results from the stipulation for the payment of the debt 44 on demand.” These words have a plain, distinct, clearly defined, legal and popular signification, well known to the courts and to the people. When an obligation for money or its equivalent is executed containing this provision, the parties perfectly understand that the debt is payable presently ; that it is due immediately, and bears interestfrom its date. This is the general acceptation in other States ; and numerous cases may be cited to show that the courts will not change this rule of construction, unless other provisions of the contract peremptorily require a different interpretation. Thus in Brett v. Ming, 1 Florida R. 447, 454, a promissory note by which the debtor stipulated 45 to pay on demand the 1st of January,” was held to be payable immediately; and the provision in respect to 44 the 1st of January” to apply to the interest exclusively. And in Newman v. Kettelle, 13 Pick. R. 418, the Supreme court of Massachusetts decided, that a promissory note, payable on demand, but not to draw interest during the life of the promissor, will support an action immediately; and the statute of limitations commences from the date of the instrument.' See also Bacon v. Page, 1 Conn. R. 404; Mason v. Patton, 1 Missouri R. 279.
The case of Boulware v. Newton, 18 Gratt. 708, is not in conflict with these views, or the authorities here relied on. The decision there was based upon a plain and positive provision of the contract, by which the obligor could not be called on to pay until after three months’ notice ; and the obligee could not be required to receive the money except at his pleasure.
It is claimed, however, that this rule of construction only applies to obligations given for the payment of money, and not for the payment or delivery of a mere commodity ; that here the contract being of the latter description, a special demand was necessary. Admit *632 this proposition to be true, in what manner will it benefit the creditor. It may be, that if this were a chattel note, he could maintain no action thereon without a special demand, but it would by no means follow that the borrower would not have a present right of discharging his obligation at any time, by delivery or tender of the currency contracted to be paid.
I think it is clear he would have had such right in this case, even if this be considered a contract for the delivery of a mere chattel. But can it be so considered ? The principle of all the cases is, that if a thing be received as money, it may be treated and recovered as such, whether in a count for money had and received, or in an action upon the security given for its repayment. Chitty on Contracts, 525, and cases cited. The parties here, have by their contract treated the Confederate currency as money ; and it must be so regarded for all the purposes of this action.
I hold, then, that this is a contract for the payment of Confederate money; which the creditor had the right to demand immediately, or to recover without such demand; and the debtor the correlative right to pay without terms at his pleasure. This is clearly the proper construction of the agreement, unless the words, “ to be paid when called for,” impart a different meaning to the covenant. Had they been omitted altogether, the legal effect of the obligation would-not have been substantially different. In the case of Kinsbury v. Butler, 4 Verm. R. 460, the Supreme court of that State held, there is no difference between a note, payable when demanded, and a note payable on demand. In either case the instrument imports an obligation to pay presently, without special’demand.
True, it is the duty of the court, in construing a contract, to give effect, if possible, to every word used by the parties, but it is not required to give a different interpretation to phrases having substantially the same *633 meaning. As was said by Mr. Justice Story, in Washburn v. Gould, 3 Story’s R. 122, 162, “ there is no magic in particular words, and we must understand them as they stand and are used in the partieular instrument; and in searching for the true interpretation we must look at all the provisions of the instrument, and give such effect to it as its obvious objects and designs require, without merely weighing the precise force of single words.” The words, “ to be paid when called for,” may imply that no interest should accrue until demand made, or that the debtor should not be considered as in default until such demand ; or that the money would be promptly paid when called for. If they are to be construed as a promise to pay only when it suited the purposes of the creditor to make the demand, and in such currency as might then be in circulation, then this consequence follows : The debtor-reserves the right to discharge bis obligation in Confederate money, and at the same time incorporates into his contract a provision which practically makes the right dependent upon the pleasure of the creditor. A refusal or failure on the part of the latter to demand payment until Confederate currency ceased to circulate, was all that was necessary to defeat an important provision, obviously intended for the benefit of the debtor. It is clear that this cannot be the true interpretation of the contract. Why was the privilege of paying in Confederate money reserved? Why was it not merely provided that the debt should be discharged in the currency in circulation when the demand should be made ?
If it be said that the intent was to pay in Confederate money, if in circulation when the creditor made his demand, the answer is, that such a provision was altogether unnecessary. The debtor in such case had the right so to pay, with or without such stipulation.
The most liberal construction that can be given to this covenant for the creditor, is that it constitutes a contract *634 to pay in such money as may be current when the pay-ment is made. Concede that this is the true interpretation. Is the creditor in a condition to insist upon a literal compliance with these terms % If the debtor or his representative had made an actual tender of the Confederate money, and the creditor had refused to receive it, it is dear that such tender would have relieved the former of any obligation to pay in any other currency. In August 1864, after the death of the debtor, the plaintiff in error, his personal representative, called on the creditor to ascertain whether he had any claim against his intestate’s estate other than the account already presented and paid. He not only failed to produce the bond in controversy, but declared he had “no claim against the estate except what the women could settle.” He thus not only prevented a payment, but precluded the possibility of a tender during the existence of the Confederate currency. Hnder these circumstances it would be the grossest injustice to permit him to insist upon the payment of the debt in a sound currency. In Jones v. Cliff, 1 Cromp., and Mees. R. 539, it was said by Lord Lyndhurst, a party can only be obliged to make a tender where by making it he could obtain possession of the goods. And Jones v. Barkley, 2 Doug. R. 684, shows that where a party is ready to do what is to be done by him, and the performance is prevented by the act of the other party, it is not necessary that a strict tender should be proved. And in Gilmore v. Holt, 4 Pick. R. 258, the Supreme court of Massachusetts- thus laid down the rule: If a person who is bound to pay money, be prevented from making a tender by any contrivance or evasion of the .other party, it will be equivalent to a tender or a sufficient excuse for not making it. These cases proceed upon the general principle that he who prevents the performance of an act, shall not be permitted to avail himself of the non-performance occasioned by his own conduct.
The case of Miller & Franklin v. The City of Lynch *635 burg, 20 Gratt. 330, in some of its features, is similar to this. Under an ordinance of the city of Lynchburg, adopted in 1862, certain notes were issued by the Common Council, and the faith of the city pledged to redeem them in current bankable funds, when presented in sums of one or more dollars. This court held this a contract to redeem in Confederate currency, and that the holders of these notes having failed to demand payment until the currency had become worthless, were not even entitled to recover the value of the notes so issued.
The peculiar features of that case, which justified the court in holding the obligation of the contract discharged, do not exist here. The conduct of the defendant in error in refusing to disclose the existence of his claim, cannot have the effect of satisfying the debt. As the case is now presented by the record, he is entitled to the value of the currency advanced by him, scaled as of the date of the contract, with interest thereon from that period. "While, therefore, the court erred in giving the instruction asked for by the defendant in error, it was correct in refusing to give those asked for .plaintiff’ in error.
For these reasons, I am of opinion theo judgment of the Circuit court should be reversed, the verdict set aside, and a new trial awarded, and the cause remanded to the said Circuit court, to be proceeded with in accordance with the principles herein announced.
Judgment reversed.